# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32597**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Catarino L. LOPEZ, Jr.**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 8 December 2020

————————————

*Military Judge:* John C. Degnan.

*Sentence:* Sentence adjudged on 16 April 2019 by SpCM convened at Joint Base Lewis-McChord, Washington. Sentence entered by military judge on 24 May 2019: Bad-conduct discharge, confinement for 50 days, reduction to E-1, and forfeiture of $1,000.00 pay per month for 3 months.

*For Appellant:* Major Benjamin H. DeYoung, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Peter F. Kellett, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Chief Judge J. JOHNSON delivered the opinion of the court, in which Judge KEY joined. Senior Judge POSCH filed a separate dissenting opinion.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

J. JOHNSON, Chief Judge:

A special court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas pursuant to a pretrial agreement (PTA), of

two specifications of failure to obey a lawful general regulation by wrongfully using an intoxicating substance on divers occasions, one specification of wrongful use of marijuana on divers occasions, and one specification of wrongful use of lysergic acid diethylamide (LSD), in violation of Articles 92 and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 912a.[1,2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for three months, forfeiture of $1,000.00 pay per month for three months, and reduction to the grade of E-1. The convening authority signed a "Decision on Action" memorandum which stated Appellant's term of confinement "is reduced from three months to 50 days." Thereafter, the military judge signed an entry of judgment (EoJ) stating the final sentence, as modified by the convening authority's action, as a bad-conduct discharge, confinement for 50 days, forfeiture of $1,000.00 pay per month for three months, and reduction to the grade of E-1.

Appellant raises three issues on appeal: (1) whether the convening authority erred by taking action prior to allowing trial defense counsel to raise and advocate additional clemency options upon trial counsel's completion of a substantial assistance memorandum; (2) whether the Statement of Trial Results (STR) and EoJ signed by the military judge failed to accurately record the pleadings and findings of the court; and (3) whether the conditions of Appellant's post-trial confinement were cruel and unusual in violation of the Eighth Amendment[3] and Article 55, UCMJ, 10 U.S.C. § 855, or rendered his sentence inappropriately severe.[4] However, we do not reach these issues[5] and instead address an issue not raised by the parties: whether the convening authority failed to take action on the sentence as required by Executive Order 13,825,

---

[1] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise specified, all other references to the UCMJ and all references to the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant pleaded guilty and was found guilty of the specification of wrongful use of LSD by exception, excepting the language "on divers occasions."

[3] U.S. CONST. amend. VIII.

[4] Appellant personally raises Issue (3) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[5] Although we do not address the issues Appellant has raised, with respect to issue (2) we note the Government concedes the STR and EoJ "do not accurately reflect the findings," in that they do not reflect Appellant was found not guilty of the excepted words "on divers occasions" in the specification alleging wrongful use of LSD.

§ 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, UCMJ, 10 U.S.C. § 860 *(Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)).[6]

We find the convening authority failed to take action on the entire sentence as he was required to do, and that remand to the Chief Trial Judge, Air Force Trial Judiciary, is appropriate. Accordingly, we defer addressing Appellant's assignments of error until the record is returned to this court for completion of our Article 66, UCMJ, review.

## I. BACKGROUND

### A. Factual Background

Appellant entered active duty with the Air Force in January 2016. His first permanent duty station was Joint Base Lewis-McChord (JBLM), Washington. According to Appellant, at JBLM he began to feel anxious and depressed. He began to regularly abuse alcohol, and in the spring and summer of 2018, Appellant began to abuse several other substances as well.

On multiple occasions between April and September 2018, Appellant abused muscle relaxants with two other Airmen by taking the relaxants with alcohol, contrary to directions, with the specific intent to alter his mood or function.[7] Appellant explained to the military judge that he used the drug with alcohol because he knew it would make him "more intoxicated."

In June 2018, Appellant used LSD on one occasion with several other Airmen in Appellant's dormitory. Appellant had been "drinking heavily" that day, but despite being intoxicated he understood what he was doing and he wanted to use the LSD, for which he paid $10.00.

In approximately June or July 2018, Appellant used marijuana with two civilian women after he helped them move into an off-base residence in Tacoma, Washington. One of the women offered the marijuana to Appellant despite knowing he was an active duty Airman, and he accepted. In December 2018, Appellant smoked marijuana again while on leave in Texas when a friend offered it to him.

---

[6] We did not order the Government to show cause as to why this case should not be remanded. We are familiar with the recent responses submitted by the Government on this issue in other cases. This decision was made for judicial economy.

[7] Appellant explained to the military judge that on the first occasion, in April 2018, he obtained a pill from another Airman who had a prescription for muscle relaxants at the time. In May 2018, Appellant obtained his own prescription for muscle relaxants.

In July 2018, Appellant and two other Airmen bought kratom[8] at an off-base store near JBLM. Appellant consumed the kratom at his dormitory room on JBLM by mixing the powder with coffee and drinking it. Appellant explained to the military judge that the kratom had a calming effect on him. Appellant used kratom approximately seven times during 2018.

At trial, Appellant told the military judge through his unsworn statements that he used drugs, like alcohol, to "self-medicate" for anxiety and depression.

## B. Procedural History

On 8 March 2019, the charges and specifications were referred for trial by special court-martial. Before trial, the convening authority and Appellant entered into a PTA whereby, *inter alia*, the convening authority agreed not to approve any sentence to confinement in excess of 60 days if a bad-conduct discharge was approved, or any sentence to confinement in excess of 100 days if no bad-conduct discharge was approved.

Appellant's court-martial was held on 16 April 2019, and the military judge signed the STR the same day.[9] Trial defense counsel submitted Appellant's clemency request on 9 May 2019, and requested the convening authority reduce the term of confinement and set aside the adjudged forfeitures. Also on 9 May 2019, trial counsel signed a memorandum for the convening authority that "recommend[ed]" Appellant "be recognized for his substantial assistance" in the prosecution of one Airman and in the investigation of another Airman.

On 16 May 2019, after considering Appellant's clemency request and consulting with the staff judge advocate, the convening authority signed a "Decision on Action" memorandum. In pertinent part, this memorandum stated:

1. I take no action on the findings in this case.

2. I take the following action on the sentence in this case:

    a. The confinement is reduced from three months to 50 days.

3. The adjudged sentence is reduced from three months to 60 days per the pretrial agreement. I am further reducing the pe-

---

[8] Appellant explained to the military judge that kratom is "a root from a plant," sold in powder form to be mixed with liquids and ingested, and that it is a depressant that "mainly relaxes you and calms you down."

[9] The STR failed to include the command that convened the court-martial as required by R.C.M. 1101(a)(3). Appellant has not claimed prejudice and we find none. *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.).

riod of confinement an additional 10 days based on the substantial assistance [Appellant] provided in the investigation and prosecution of other persons.

The memorandum contained no further indication as to whether any other element of the sentence was approved, disapproved, commuted, or suspended. On 24 May 2019, the military judge signed the EoJ reflecting the findings and the sentence, as modified by the convening authority's 16 May 2019 memorandum.

## II. DISCUSSION

### A. Law

Proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted). Interpretation of a statute and a Rule for Courts-Martial (R.C.M.) are also questions of law that we review de novo. *United States v. Hunter*, 65 M.J. 399, 401 (C.A.A.F. 2008) (citation omitted); *United States v. Martinelli*, 62 M.J. 52, 56 (C.A.A.F. 2005) (citation omitted).

Executive Order 13,825, § 6(b), requires that the version of Article 60, UCMJ, 10 U.S.C. § 860

in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . to the extent that Article 60: (1) requires action by the convening authority on the sentence; . . . or (5) authorizes the convening authority to approve, disapprove, commute, or suspend a sentence in whole or in part.

*See* 2018 Amendments to the *Manual for Courts-Martial, United States*, 83 Fed. Reg. at 9890. The version of Article 60, UCMJ, in effect on the date of the earliest charged offense for which Appellant was found guilty, 1 May 2017,[10] stated "[a]ction on the sentence of a court-martial *shall* be taken by the convening authority or by another person authorized to act under this section." 10 U.S.C. § 860(c)(2)(A) (2016 *MCM*) (emphasis added); *see also United States v. Perez*, 66 M.J. 164, 165 (C.A.A.F. 2008) (per curiam) ("[T]he convening authority is required to take action on the sentence . . . .").[11] Article 60(c)(2)(B),

---

[10] The specification of wrongful use of marijuana alleged Appellant used the drug on divers occasions between on or about 1 May 2017 and on or about 31 December 2018.

[11] In contrast, Article 60a, UCMJ, 10 U.S.C. § 860a, which went into effect on 1 January 2019, does not require the convening authority to take action on the sentence of every

UCMJ, further stated: "Except as [otherwise] provided . . . the convening authority . . . may approve, disapprove, commute, or suspend the sentence of the court-martial in whole or in part." 10 U.S.C. § 860(c)(2)(B) (2016 *MCM*).

The convening authority's action is required to be "clear and unambiguous." *United States v. Politte*, 63 M.J. 24, 26 (C.A.A.F. 2006) (citation omitted).

**B. Analysis**

The charges and specifications were referred for trial after 1 January 2019; therefore, the R.C.M.s that went into effect on 1 January 2019 were generally applicable to the post-trial processing of Appellant's case. *See* Executive Order 13,825, § 2, 83 Fed. Reg. at 9889. However, the earliest date of an offense of which Appellant was convicted is 1 May 2017. Therefore, in accordance with Executive Order 13,825 § 6, the version of Article 60, UCMJ, in effect prior to 1 January 2019 applied to the convening authority to the extent that it required him to take action on the sentence. 83 Fed. Reg. at 9890. Before 1 January 2019, Article 60, UCMJ, required the convening authority to take action on the sentence in every case. The convening authority's "Decision on Action" memorandum indicated that he took action specifically to reduce Appellant's term of confinement; but it did not indicate any further action to approve, disapprove, commute, or suspend the other elements of the sentence.

This court addressed a similar, although not identical, situation in its recent en banc decision in *United States v. Aumont*, No. ACM 39673, 2020 CCA LEXIS 416 (A.F. Ct. Crim. App. 20 Nov. 2020) (en banc) (unpub. op.). In *Aumont*, the convening authority signed a memorandum stating that he took "no action" on the findings or sentence, where the charges had been referred after 1 January 2019 but the earliest offense date was before 1 January 2019. *Id.* at *19. *Aumont* resulted in four separate opinions, reflecting four distinct positions among the judges on this court as to whether the convening authority's statement that he took no action was erroneous and, if so, whether remand for correction was required. *Id.* (*passim*). A majority of the judges concluded the convening authority erred, but only a minority of the judges found the error required remand for corrective action. *Id.* (*passim*). The two judges in the majority in the instant case adhered to the dissenting opinion in *Aumont*, and would have held that the convening authority's action was, at a minimum, ambiguous, and should have been returned for correction. *Id.* at *79–90 (J. Johnson, C.J., dissenting in part and in the result). We recognize that panels of this

court-martial. *See also* R.C.M. 1109(g) (explaining procedures depending on whether or not the convening authority "decides to act on the sentence" in certain courts-martial); R.C.M. 1110(e) (explaining procedures depending on whether or not the convening authority decides to take action on the findings or sentence in certain courts-martial).

court composed of other judges have applied different reasoning in other cases, before and after *Aumont* was issued. *See, e.g.*, *United Sates v. Cruspero*, No. ACM S32595, 2020 CCA LEXIS 427 (A.F. Ct. Crim. App. 24 Nov. 2020) (unpub. op.); *United States v. Barrick*, No. ACM S32579, 2020 CCA LEXIS 346 (A.F. Ct. Crim. App. 30 Sep. 2020) (unpub. op.); *United States v. Finco*, No. ACM S32603, 2020 CCA LEXIS 246 (A.F. Ct. Crim. App. 27 Jul. 2020) (unpub. op.); *cf. United States v. Coffman*, 79 M.J. 820, 824 (A. Ct. Crim. App. 2020) (finding convening authority's failure to take action was harmless error). Nevertheless, we continue to adhere to the same general view expressed in the dissenting opinion in *Aumont* in situations where the convening authority fails to take action on the sentence as required by Executive Order 13,825 and the pre-1 January 2019 version of Article 60, UCMJ.

However, Appellant's case is different from *Aumont* in a notable respect. Whereas the convening authority in *Aumont* affirmatively stated that he took "no action" on the case, *Aumont*, unpub. op. at *2, the convening authority in the instant case did take an action on the sentence—specifically, he reduced the term of confinement from three months to 50 days. Therefore, the instant case raises a question not raised in *Aumont*: whether the convening authority's action with respect to one element of the sentence satisfies the pre-1 January 2019 requirement under Article 60, UCMJ, that the convening authority take action on the sentence.

We conclude the convening authority's failure to take action on the entire sentence fails to satisfy the Article 60, UCMJ (2016 *MCM*), requirement. Prior to 1 January 2019, the convening authority was required to explicitly state his approval or disapproval of the sentence. *See United States v. Wilson*, 65 M.J. 140, 141 (C.A.A.F. 2007) (citing R.C.M. 1107(d)(1)). "If only part of the sentence is approved, the action shall state which parts are approved." *Id.* (quoting R.C.M. 1107(f)(4)(A)). In this case, the convening authority's action was incomplete and ambiguous at best, and therefore deficient. *See Politte*, 63 M.J. at 26. Moreover, as in *Aumont*, the convening authority's memorandum suggests the requirement to take action on the entire sentence was overlooked, and Appellant's case was processed entirely under the new Article 60 and Article 60a, UCMJ, and R.C.M.s. In either case, for the reasons set forth in the dissenting opinion in *Aumont*, we find the record should be remanded to the Chief Trial Judge, Air Force Trial Judiciary, to resolve the error. *See* Article 66(f)(3), UCMJ, 10 U.S.C. § 866(f)(3).

## III. Conclusion

This case is **REMANDED** to the Chief Trial Judge, Air Force Trial Judiciary, to resolve a substantial issue with the convening authority's decision memorandum as the action taken on Appellant's adjudged sentence was ambiguous and incomplete.

Our remand returns jurisdiction over the case to a detailed military judge and dismisses this appellate proceeding consistent with Rule 29(b)(2) of the Joint Rules for Appellate Procedure for Courts of Criminal Appeals. JT. CT. CRIM. APP. R. 29(b)(2). A detailed military judge may:

(1) Correct the Statement of Trial Results;

(2) Return the record of trial to the convening authority or his successor to take action on the sentence;

(3) Conduct one or more Article 66(f)(3), UCMJ, proceedings using the procedural rules for post-trial Article 39(a), UCMJ, sessions; and/or

(4) Correct or modify the Entry of Judgment.

Thereafter, the record of trial will be returned to the court for completion of appellate review under Article 66, UCMJ.

POSCH, Senior Judge (dissenting):

I disagree that the convening authority failed to effectuate a sentence that he determined was appropriate for Appellant and that was in accordance with the limitation on sentence in the pretrial agreement (PTA).[1] I dissent because I conclude that the convening authority's decision closely tracked his obligations under the Military Justice Act of 2016 (MJA),[2] as implemented by the President effective on 1 January 2019 in Exec. Order 13,825, 83 Fed. Reg. 9889 (8 Mar. 2018). The convening authority did not err because Article 60a, UCMJ, 10 U.S.C. § 860a, contained in the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*), governed the convening authority's decision on action, and not Article 60, UCMJ, 10 U.S.C. § 860 (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)), as found by the opinion of the court. In this

---

[1] The convening authority agreed that Appellant's sentence would not exceed 60 days if a bad-conduct discharge was adjudged, or 100 days if no bad-conduct discharge was adjudged. Because Appellant's sentence included a bad-conduct discharge, this opinion refers to the pretrial agreement (PTA) as having a 60-day limitation on confinement.

[2] *See* National Defense Authorization Act for Fiscal Year 2017 (FY17 NDAA), Pub. L. No. 114-328, §§ 5001–5542 (23 Dec. 2016).

regard, I adhere to the view expressed in *United States v. Aumont*, No. ACM 39673, 2020 CCA LEXIS 416, at *36–79 (A.F. Ct. Crim. App. 20 Nov. 2020) (en banc) (unpub. op.) (Posch, S.J., concurring in part and in the result), and *United States v. Barrick*, No. ACM S32579, 2020 CCA LEXIS 346, at *9–36 (A.F. Ct. Crim. App. 30 Sep. 2020) (unpub. op.) (Posch, S.J., concurring in the result).

Within five days after receiving the convening authority's "Decision on Action" memorandum, Appellant did not raise a motion with the military judge under Rule for Courts-Martial (R.C.M.)[3] 1104(b)(2)(B), which suggests that Appellant either had no reason to believe that the convening authority's decision on any component of his sentence was "incomplete, irregular, or contain[ed] error" or that he suffered any prejudice. Even on appeal, Appellant identifies no error, plain or otherwise, that would rebut a presumption of regularity in the manner by which the convening authority effectuated Appellant's sentence after the convening authority received the advice of his staff judge advocate (SJA).[4] *See United States v. Wise*, 20 C.M.R. 188, 194 (C.M.A. 1955) ("[T]he presumption of regularity requires us to presume that [the convening authority] carried out the duties imposed upon him by the Code and the Manual."); *see also United States v. Scott*, 66 M.J. 1, 4 (C.A.A.F. 2008) (applying a "presumption of regularity" to the convening authority's decision (internal quotation marks and citation omitted)).

To be sure, if legacy provisions of Article 60 (2016 *MCM*) were operable to guide the convening authority here, as the opinion of the court finds, *sua sponte*, that they were, then it would follow that "[a]ction on the sentence . . . shall be taken." Article 60(c)(2)(A), UCMJ, 10 U.S.C. § 860(c)(2)(A) (2016 *MCM*). "Action" on the sentence as that term is used in the 2016 *MCM* means to "approve, disapprove, commute, or suspend the sentence of the court-martial in whole or in part." Article 60(c)(2), UCMJ, 10 U.S.C. § 860(c)(2). One month after Appellant pleaded guilty and was sentenced, the convening authority indicated none of these options in regard to the adjudged bad-conduct discharge, reduction to E-1, and forfeiture of $1,000.00 pay per month for three months. The convening authority reduced the confinement from three months to 50 days, but otherwise effectuated the entire sentence by taking no action on the

---

[3] Unless otherwise noted, references to the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*).

[4] *See* R.C.M. 1109(d)(2) ("In determining whether to take action, or to decline taking action under this rule, the convening authority shall consult with the staff judge advocate or legal advisor.").

other components.[5] Eight days later, the military judge who presided over Appellant's court-martial signed an entry of judgment reflecting the findings and the sentence, as modified by the convening authority.

Resolution that the convening authority did not err in effectuating the entire sentence turns on understanding several provisions of the President's implementation of Article 60a, UCMJ, in the 2019 *MCM*, above all, Exec. Order 13,825, §§ 3(a), 5, and 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018). Because the convening authority's decision memorandum was altogether in accordance with the President's implementation and the law, I conclude that the convening authority did not err when he took no action on three of the four components of Appellant's sentence.

## A. Article 60a, UCMJ (2019 *MCM*)

Appellant was convicted of offenses he committed after 24 June 2014, which is the effective date of Article 60, UCMJ, in the 2016 *MCM*.[6] In courts-martial for offenses occurring on and after this date, and before implementation of the MJA, a convening authority was required to take action to effectuate the sentence in every court-martial case.[7] *See* Article 60(c)(2)(A), UCMJ (2016 *MCM*) ("Action on the sentence of a court-martial shall be taken by the convening authority . . . .").

---

[5] On the face of it, the convening authority's decision memorandum reached both the findings of guilty and the adjudged sentence. However, the opinion of the court focuses on the convening authority's determination of Appellant's sentence as do I.

[6] *See* FY14 NDAA, Pub. L. No. 113-66, § 1702, 127 Stat. 672, 958 (26 Dec. 2013) (establishing 24 June 2014 as the effective date for Article 60, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 860, as it appears in the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)).

[7] Before the effective date of the Military Justice Act of 2016 (MJA), a convening authority was required to either approve the sentence of the court-martial, or—subject to limits on that authority as provided by law—disapprove, commute, or suspend the sentence, in whole or in part. *See, e.g.*, Article 60(c)(2) and (c)(4), UCMJ, 10 U.S.C. § 860(c)(2), (c)(4) (2016 *MCM*). Importantly, and as later discussed in this opinion, a convening authority has the statutory authority pursuant to Article 60 in the 2016 *MCM* to take action pursuant to the terms of a pretrial agreement with an accused. *See* Article 60(c)(4)(C), UCMJ, 10 U.S.C. § 860(c)(4)(C) (2016 *MCM*). No similar power conferred on a convening authority is found in the 2019 *MCM*.

The MJA changed this requirement when Congress amended Article 60a, UCMJ, as it appears in the 2019 *MCM*[8] to require that a convening authority take "action" on the sentence if and only if a convening authority intends to grant relief by reducing, commuting, suspending, or in some cases, by disapproving a sentence, in whole or in part, as allowed for by law.[9] In accordance with the amended Article 60a in the 2019 *MCM*, a convening authority's formal refusal to act—that is, declination to act by taking no action on a component of an adjudged sentence—effectuates that part of the sentence in the same way that a convening authority once approved the component without modification under the former Article 60, UCMJ (2016 *MCM*). This change is perhaps most clearly stated in Article 60a(f)(2), UCMJ, in the 2019 *MCM* by the conditional language: "*If*, under this section, the convening authority reduces, commutes, or suspends the sentence, the decision of the convening authority shall include a written explanation of the reasons for such action." 10 U.S.C. § 860a(f)(2) (emphasis added).[10] After the convening authority's decision, the judgment of the court-martial consists of the adjudged sentence listed in the Statement of Trial Results as modified by "*any* post-trial action by the convening authority." Article 60c(a)(1)(B)(i), UCMJ, 10 U.S.C. § 860c(a)(1)(B)(i) (2019 *MCM*) (emphasis added).

For many years, military justice practitioners have been accustomed to thinking of "action" as effectuating the sentence—whether by granting relief or not—as this term appears in editions of the *Manual for Courts-Martial* before the 2019 *MCM*. This legacy and more comprehensive definition gave way to a more specific meaning in the MJA and the President's implementation of the Act. Although not expressly defined, taking "action" in the 2019 *MCM* reveals it to mean "granting relief" each and every time that a convening authority decides to take action on the sentence in a particular case. Conversely, in accordance with Article 60a in the 2019 *MCM*, a convening authority's "no action" decision on a component of an adjudged sentence results in an entry of judgment that reflects the sentence adjudged for that component without modification, as it did here.

---

[8] The changes made to Article 60, UCMJ (2016 *MCM*), as now reflected in Article 60a, UCMJ, and in other articles that were subsequently incorporated in the 2019 *MCM*, were among the many changes that Congress directed in the MJA.

[9] *See* Articles 60a and 60b, UCMJ, 10 U.S.C. §§ 860a, 860b (2019 *MCM*). In certain cases the convening authority may also act to "disapprove" a sentence in whole or in part. *See* Article 60b(a)(1)(C)–(F), UCMJ, 10 U.S.C. § 860b(a)(1)(C)–(F) (2019 *MCM*).

[10] *See also* Article 60a(a)(1)(A), UCMJ, 10 U.S.C. § 860a(a)(1)(A) (2019 *MCM*) (subject to limitations, a convening authority "*may* act on the sentence of the court-martial" (emphasis added)).

In Appellant's case, the language of the convening authority decision to take no action on the punitive discharge, reduction in grade, and forfeiture of pay is synonymous with not granting relief on these sentence components. By deciding to take no action, the convening authority followed the post-trial procedures that Congress directed in the MJA, notably Article 60a in the 2019 *MCM*, and not the legacy procedures in Article 60 in the 2016 *MCM*. As a result, the question of whether the convening authority's decision memorandum contains error turns on the post-trial procedures that Congress and the President intended the convening authority to follow. Answering this question requires review of the convening authority's decision in light of the President's implementation of the MJA. If taking no action on these components complied with the implementation of the Act, as I conclude that it did, then there is no error to evaluate for harmlessness or to correct on appeal or by remand to the military judge.

## B. Implementation of the MJA: Executive Order 13,825

In the MJA, Congress assigned to the President considerable discretion to set the effective date of the amendments to the UCMJ and to prescribe the regulations implementing those amendments.[11] However, that discretion was bounded by a date by which implementation must be completed. With few limitations, Congress directed that the implementation "shall take effect" not later than 1 January 2019.[12] The President then exercised this authority by issuing Executive Order 13,825 and new Rules for Courts-Martial that are listed in Annex 2 of the Executive Order and that were subsequently promulgated in Part II of the 2019 *MCM*.

In accordance with the direction given by Congress, the President implemented Article 60a, UCMJ (2019 *MCM*), which directs changes in the manner by which a convening authority effectuates a sentence without modification (i.e., as adjudged). Exec. Order 13,825, § 3(a), made the changes to Article 60a

---

[11] *See* FY17 NDAA, Pub. L. No. 114-328, § 5542; *see also* Article 36(a), UCMJ, 10 U.S.C. § 836(a), in the 2016 and 2019 *MCMs* (President may prescribe regulations for post-trial procedures); *United States v. Bartlett*, 66 M.J. 426, 428 (C.A.A.F. 2008) (the authority to prescribe regulations prevails "insofar as such regulations are not inconsistent with the UCMJ").

[12] The FY17 NDAA, including the MJA in Division E of the NDAA, was enacted on 23 December 2016. "Except as otherwise provided in this division, the amendments made by this division shall take effect on the date designated by the President, which date shall be not later than the first day of the first calendar month that begins two years after the date of the enactment of this Act." *See* FY17 NDAA, Pub. L. No. 114-328, § 5542(a).

(2019 *MCM*) effective on 1 January 2019, unless otherwise provided by exception. *See* 83 Fed. Reg. 9889 (8 Mar. 2018) ("[E]xcept as otherwise provided by the MJA or this order, the MJA shall take effect on January 1, 2019."). Reciprocally, Exec. Order 13,825, § 5, effected new Rules for Courts-Martial for cases referred to trial by court-martial on and after 1 January 2019.[13] The new rules implement the amendments made by Congress in Article 60a in the 2019 *MCM*, and include considerable revisions in the manner by which the convening authority effectuates an appellant's sentence after one has been adjudged.

Among the rules that took effect on 1 January 2019 for cases referred on and after that date are R.C.M. 1109 and 1110 that guide a convening authority's decision whether to take action on an adjudged sentence.[14] Following the new procedures in those rules, which implement and track the amendments that Congress made to Article 60a that were incorporated in the 2019 *MCM*, the convening authority does not effectuate a sentence by taking action unless the convening authority intends to reduce, commute, or suspend, or in some cases, disapprove, a sentence, in whole or in part. R.C.M. 1109(c)(5)(A), (g)(2); R.C.M. 1110(c), (e). Under these rules, a "convening authority is no longer required to take action on the results of every court-martial." *United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.) (citing R.C.M. 1109 and 1110 (2019 *MCM*)). Instead, a convening authority may decline to take action after consulting with the SJA and considering any clemency matters timely submitted by an accused. R.C.M. 1109(c), (d), (g); R.C.M. 1110(c)(1) ("action on the sentence is not required"); *see also Moody-Neukom*, unpub. op. at *3.

## C. Application of the MJA, as Implemented, to Appellant's Case

One turns then to consider the effect of the President's implementation of the MJA in Executive Order 13,825 on the post-trial procedures that are applicable to Appellant's case. Here, the charges and specifications were referred to trial by general court-martial on 8 March 2019. Thus, the convening authority

---

[13] *See* Exec. Order 13,825, § 5, 83 Fed. Reg. at 9890 (incorporating in the 2019 *MCM* new Rules for Courts-Martial among the amendments in Annex 2, that "shall take effect on January 1, 2019," subject to exceptions that are not applicable here); *see also* FY17 NDAA, Pub. L. No. 114-328, § 5542(c)(2) (stating MJA amendments to the UCMJ "shall not apply to any case in which charges are referred to trial by court-martial before the effective date of such amendments").

[14] *See* Exec. Order 13,825, § 5, 83 Fed. Reg. at 10040–43 (implementing R.C.M. 1109, *Reduction of sentence, general and special courts-martial*); 10043–44 (implementing R.C.M. 1110, *Action by convening authority in certain general and special courts-martial*).

was required to follow the procedural provisions in the 2019 *MCM* that went into effect on 1 January 2019, notably R.C.M. 1109 and 1110, as applicable, that are germane to a convening authority's power and responsibility in post-trial processing. In accordance with these rules, unless the convening authority had determined to grant relief,[15] or was required to grant relief, the convening authority was under no obligation to act on the sentence after Appellant was tried and sentenced on 16 April 2019.

The convening authority took action to reduce Appellant's confinement from three months to 50 days. In compliance with R.C.M. 1109,[16] the convening authority took no action on three of the four components of Appellant's adjudged sentence when he signed the decision memorandum on 16 May 2019, thereby indicating a formal determination that sentencing relief was not warranted on these components. Subsequently, the military judge signed the entry of judgment reflecting the judgment of the court-martial. Consequently, the convening authority's no action decision on these components in compliance with the President's implementation of the MJA, as made plain in R.C.M. 1109, was not error. It follows that the judgment entered by the military judge, in that regard, is correct.[17]

Nonetheless, this conclusion that the convening authority did not err because he followed Article 60a, UCMJ, and R.C.M. 1109 as implemented by the President in the 2019 *MCM*, parts ways with the opinion of the court here, which finds that the convening authority's decision was error because it failed

---

[15] The convening authority had the power to reduce, commute, or suspend, in whole or in part, Appellant's confinement, reduction in grade, and forfeiture of pay, *see* R.C.M. 1109(c)(5), and was authorized to modify the bad-conduct discharge if Appellant met the conditions for providing substantial assistance in the criminal investigation or prosecution of another person upon recommendation by trial counsel, *see* R.C.M. 1109(c)(1); R.C.M. 1109(e). This is because Appellant was convicted of at least one offense for which the maximum authorized sentence to confinement is more than two years and, also, because the adjudged sentenced included a bad-conduct discharge. *See* R.C.M. 1109(a).

[16] In Appellant's case, R.C.M. 1109 governed the convening authority's discretion, and not R.C.M. 1110, because of the maximum authorized sentence to confinement that applied to Appellant's case without considering the jurisdictional maximum of a special court-martial, and, also, because the adjudged sentenced included a bad-conduct discharge. *See* R.C.M. 1109(a); *see also* R.C.M. 1110(a) (applying rule "to the post-trial actions of the convening authority in any general or special court-martial not specified in R.C.M. 1109(a)").

[17] I agree with the opinion of the court and the Government's concession that the Statement of Trial Results and the entry of judgment do not accurately reflect the findings because Appellant was found not guilty of the excepted words "on divers occasions" in the specification alleging wrongful use of LSD.

to meet the requirements of Article 60, UCMJ (2016 *MCM*). This court's decision does not rely on R.C.M. 1109 in the 2019 *MCM*, or attach any significance to the President's implementation of this rule in Exec. Order 13,825, § 5. Instead, the opinion focuses on § 6(b) of this same Executive Order. As applicable to cases like Appellant's where there is a conviction for at least one offense committed before 1 January 2019 that was referred on or after that date, § 6(b) guides a convening authority to apply the legacy provisions of Article 60 in the 2016 *MCM*, in certain prescribed circumstances. Section 6(b) states in pertinent part:

> If the accused is found guilty of a specification alleging the commission of one or more offenses before January 1, 2019, Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . to the extent that Article 60:

> (1) requires action by the convening authority on the sentence
> . . . .

Exec. Order 13,825, § 6(b), 83 Fed. Reg. at 9890 (8 Mar. 2018).

By the terms of § 6(b), the convening authority was required to follow Article 60 as it appears in the 2016 *MCM*, but only "to the extent that" Article 60 "*requires* action by the convening authority on the sentence." (Emphasis added). If effectuating a sentence does not *require* a convening authority to take action, then § 6(b)'s direction to a convening authority to follow "Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty," is inapposite.

The opinion of the court looks to the language in Article 60 in the 2016 *MCM*, and finds the necessary words of obligation in Article 60(c)(2)(A), UCMJ. This provision states without qualification that "[a]ction on the sentence of a court-martial shall be taken by the convening authority." By looking to Article 60(c)(2)(A) in the 2016 *MCM* to understand § 6(b) of the Executive Order, a convening authority would be required to take action (in the legacy sense) in every case, until all of an appellant's convictions are for offenses committed on or after 1 January 2019. By this reasoning, a convening authority would have to disregard the President's implementation of R.C.M. 1109 that went into effect on 1 January 2019 in every case where there is a conviction for at least one offense committed before, and referred on or after, that date. Paradoxically, effective on the same date that the President's implementation of R.C.M. 1109 went into effect, the opinion of the court finds it inapplicable and would nullify its application in cases in which a convening authority determines that granting sentencing relief is not authorized or warranted. It does so despite any indication of such intent in the text of the Executive Order.

15

Without question, a convening authority cannot take no action on a component of a sentence in compliance with R.C.M. 1109 in the 2019 *MCM*, and at the same time satisfy the language in Article 60(c)(2)(A), UCMJ, in the 2016 *MCM*. However, the opinion of the court does not address what in my mind is an unmistakable contradiction between the President's implementation of R.C.M. 1109 in Exec. Order 13,825, § 5, on the one hand, and its understanding of Exec. Order 13,825, § 6(b), on the other. In the case before us, the convening authority cannot abide by the President's implementation of the specific provisions of R.C.M. 1109 in § 5 by taking no action on a component of Appellant's sentence and at the same time have a duty to act in every case so as to effectuate a sentence, which the opinion of the court finds by its reading of § 6(b) that looks to Article 60(c)(2)(A) in the 2016 *MCM*. The decision also fails to explain how its interpretation complied with Congress' direction to the President to implement the MJA by 1 January 2019, notably the post-trial procedures that Congress directed convening authorities to follow to effectuate a sentence.

In reaching the conclusion that the convening authority was required to take action (in the legacy sense) on each of the four components of Appellant's sentence, the opinion of the court interprets one part of the President's implementation so as to render another part, § 5, inconsequential in cases, like Appellant's, where there is a conviction for at least one offense committed before 1 January 2019 that was referred on or after that date, and the convening authority determines no sentencing relief is warranted. By taking "no action" in compliance with R.C.M. 1109 in the 2019 *MCM* as the President intended in Exec. Order, § 5, the majority would find error in an essential and recurring post-trial responsibility that was directed by Congress in the MJA: the manner by which convening authorities effectuate sentences for convictions for pre-1 January 2019 offenses that are referred on and after that date.

Of greater significance, the assignment by Congress to the President to designate the effective date of the MJA amendments was not without limitation. As previously noted, Congress directed that the President's implementation of the Act "shall take effect" not later than 1 January 2019.[18] The amendments to the UCMJ include changes Congress made to the procedural provisions in Article 60 whereby a convening authority may take no action to effectuate a sentence. But the majority opinion's interpretation of Exec. Order 13,825, § 6(b)(1), would require a convening authority to continue to take action on a sentence in accordance with the legacy provisions of Article 60 until the date of the earliest conviction is on or after 1 January 2019. Thus, if the majority

---

[18] *See* FY17 NDAA, Pub. L. No. 114-328, § 5542(a).

opinion's interpretation of Exec. Order 13,825, § 6(b), was correct, it would operate to delay implementation of a key MJA provision well past 1 January 2019.[19] With few exceptions, notably Exec. Order 13,825, §§ 6(a), 9, and 10, the President's implementation of the MJA applies to offenses committed or alleged before 1 January 2019. 83 Fed. Reg. at 9890–91. However, the provisions implemented by exception in §§ 6(a), 9, and 10 relate to important substantive rights of an accused that go beyond the form by which Congress intended a convening authority to effectuate a sentence as is the case here. The President may well have intended these few exceptions were necessary so that an accused would get the benefit of significant legacy provisions in the UCMJ that protect important substantive rights and at the same time comply with the implementation timeline that Congress directed.

Importantly, if the President had intended the changes to the manner by which a convening authority effectuates a sentence in Article 60a in the 2019 *MCM* to begin on or after 1 January 2019, one might reasonably conclude that the President would have done so expressly instead of by implication. Thus, a delayed implementation in the manner by which a sentence is effectuated in the 2019 *MCM* would raise questions not just about the responsibility of a convening authority under the President's implementation of the MJA, but also, and more fundamental, whether the President's implementation schedule was in compliance with Congress' direction that the President shall implement the Act not later than 1 January 2019.

### 1. Executive Order 13,825

Executive agencies "must always 'give effect to the unambiguously expressed intent of Congress.'" *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 326 (2014) (quoting *National Assn. of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 665 (2007)). The CAAF has similarly cautioned that it "has no license . . . to construe statutes in a way that 'undercut[s] the clearly expressed intent of Congress.'" *United States v. McPherson*, 73 M.J. 393, 396 (C.A.A.F. 2014) (quoting *United States v. Bartlett*, 66 M.J. 426, 428 (C.A.A.F. 2008) (alteration in original)).

---

[19] Notably, it is incongruent that, effective 1 January 2019, Congress would eliminate in the MJA the *substantive* requirement that a convening authority consider the written recommendation of a staff judge advocate before determining the sentence in a general court-martial or any special court-martial case that includes a bad-conduct discharge, as required by a legacy provision of Article 60, *see, e.g.*, Article 60(e), UCMJ, 10 U.S.C. § 860(e) (2016 *MCM*), but still require a convening authority to follow a legacy provision that specifies the language a convening authority uses to effectuate a sentence.

The CAAF has recognized that ordinary rules of statutory construction are helpful "when analyzing a rule promulgated by the President," which would seemingly embrace analysis of an executive order like the one here. *United States v. Murphy*, 74 M.J. 302, 305 (C.A.A.F. 2015) ("[I]n determining the scope of a statute, we look first to its language" and "apply the same interpretive process when analyzing a rule promulgated by the President." (internal quotation marks omitted)); *see also United States v. Fetrow*, 76 M.J. 181, 185–86 (C.A.A.F. 2017) (rules of statutory construction are helpful in analyzing provisions of the *Manual for Courts-Martial*). It follows then that judicial review of the President's Executive Order implementing the MJA is not unlike review of an agency's construction of a statute.

When two provisions "initially appear to be in tension," the provisions should be interpreted in a way that renders them compatible, not contradictory. *United States v. Kelly*, 77 M.J. 404, 407 (C.A.A.F. 2008) ("[T]his Court typically seeks to harmonize independent provisions of a statute." (citing *United States v. Christian*, 63 M.J. 205, 208 (C.A.A.F. 2006)). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Kelly*, 77 M.J. at 406–07 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal quotation marks omitted)). "As is true of interpretation of statutes, the interpretation of an Executive Order begins with its text." *Bassidji v. Goe*, 413 F.3d 928, 934 (9th Cir. 2005) (citation omitted). Thus, when an interpretation of the text of one provision in an executive order works against another provision or an act of Congress, there is good reason to reject that interpretation and look for another.

**2. Analysis**

The place to begin is with the text of the President's implementation. Sections 5 and 6(b) of the Executive Order initially appear to be in tension, so each provision will be examined in turn. The language of § 5 plainly implements the new Rules for Courts-Martial and the text is not subject to more than one possible meaning. It states that "[t]he amendments in Annex 2 [of Executive Order 13,825] . . . shall take effect on January 1, 2019." 83 Fed. Reg. at 9890. As previously discussed, Annex 2 includes the President's implementation of R.C.M. 1109 in the 2019 *MCM* that went into effect for cases referred to trial by court-martial on and after 1 January 2019. The fact that § 5 enumerates three inapposite exceptions to the application of these amendments suggests that there are no other exceptions, lending further validity to the conclusion that the convening authority did not err when he followed R.C.M. 1109 in effectuating the sentence adjudged in Appellant's case.

Whereas § 5 requires looking no further than that provision to determine its meaning and application, § 6(b), in contrast, directs practitioners to first

look to the legacy provisions of Article 60, UCMJ, to resolve which version of Article 60 may apply to a particular case, and also, to what extent. This is so because § 6(b) states that "Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . *to the extent that Article 60 . . .* requires action by the convening authority on the sentence . . . ." 83 Fed. Reg. at 9890 (emphasis added). The phrase "to the extent that" is one of limitation that precludes blanket application of legacy provisions of Article 60. It plainly encompasses conditions in which no legacy provision of Article 60 will apply. This qualifying language makes clear that individual provisions of Article 60a in the 2019 *MCM* will bind a convening authority unless any one of several conditions is present in Article 60, UCMJ, as was in effect on the date of the earliest offense. First among these conditions is if a legacy provision of an earlier version of Article 60 "requires action by the convening authority on the sentence." Exec. Order 13,825, § 6(b)(1), 83 Fed. Reg. at 9890.

Taking "action," as discussed earlier, has a precise, specialized meaning in the 2019 *MCM* that differs from its more comprehensive meaning to effectuate a sentence in all cases before the MJA's implementation. Thus, a full understanding of the applicability of § 6(b) to Appellant's case entails an examination of Article 60 in the 2016 *MCM* for a circumstance in which a convening authority is required to grant relief (i.e., take action) on the sentence. If such a circumstance was present in a case like Appellant's—where at least one offense was committed on or after 24 June 2014 and before 1 January 2019, that was referred on or after that date—then a convening authority might be required to take action on the sentence by following one or more provisions of Article 60 in the 2016 *MCM*. Such a circumstance would be within the meaning of the President's implementation in § 6(b).

One such circumstance that protects a critical right of an accused is the convening authority's legal duty to honor and effectuate a PTA. A convening authority has no statutory or regulatory authority under any specific provision in the 2019 *MCM* to effectuate a sentence limitation of a PTA, known as a "plea agreement" in the MJA. Instead, such agreements have a binding effect upon their acceptance by a military judge.[20] An accused automatically gets the benefit of the agreement without the convening authority having to take action or approve a sentence to comply with the agreement. However, this novel approach to the manner by which agreed-upon sentence limitations are enforced

---

[20] *Compare* Article 53a(d), UCMJ, 10 U.S.C. § 853a(d) (2019 *MCM*), *and* R.C.M. 1002(a)(2), *and* R.C.M. 1005, Discussion, *with* Article 60(c)(4)(C), UCMJ (2016 *MCM*), *and* R.C.M. 1107(d)(1)(C)(ii) (2016 *MCM*).

in the MJA takes effect only in cases unlike Appellant's "in which all specifications allege offenses committed on or after January 1, 2019." *See* Exec. Order 13,825, § 10, 83 Fed. Reg. at 9890–91. Conversely, in cases like Appellant's where there is a conviction for at least one offense committed after 24 June 2014 and before 1 January 2019 that was referred on or after that date, a PTA may be consequential and the convening authority would be required to follow the legacy provisions of Article 60 (2016 *MCM*), and take action to both honor and effectuate a sentence as agreed to in the PTA. This is perhaps best illustrated by two examples that show the different applications of Article 60. The first example closely tracks Appellant's case in which the convening authority properly applied Article 60a and R.C.M. 1109 from the 2019 *MCM*. The second example reveals when a convening authority would be required to apply Article 60 and R.C.M. 1107[21] from the 2016 *MCM* if Appellant's sentence had been different.

Here, Appellant was convicted of offenses he committed before 1 January 2019 that were referred after that date. Appellant's adjudged sentence included confinement for three months, which exceeded the 60-day limitation on confinement in Appellant's PTA. It follows then that the convening authority was obligated to modify the sentence to comply with the PTA. However, the convening authority could do so by looking to Article 60a in the 2019 *MCM* and without following the guidance of Article 60 in the 2016 *MCM*. Specifically, and because Appellant's sentence of confinement did not exceed six months, the convening authority had the power to "reduce" Appellant's adjudged sentence. This included the power to grant sentencing relief, as he did, by taking action to reduce Appellant's confinement to comply with the limitation in the PTA. *See* Article 60a(b)(2), UCMJ (2019 *MCM*) ("convening authority may reduce, commute, or suspend any sentence not specified in paragraph (1)").[22] The convening authority could look again to Article 60a in the 2019 *MCM* for the power to further reduce Appellant's sentence, as he did, by an additional ten days

---

[21] R.C.M. 1107 implements Article 60 in the 2016 *MCM*. R.C.M. 1107(d)(1)(C)(ii) guides a convening authority to act on a sentence limitation in a PTA. It states,

> *Pretrial agreement.* If a pretrial agreement has been entered into by the convening authority and the accused, as authorized by R.C.M. 705, the convening authority or another person authorized to act under this rule shall have the authority to approve, disapprove, commute, or suspend a sentence, in whole or in part, pursuant to the terms of the pretrial agreement.

[22] The convening authority had this power because Appellant was convicted of at least one offense for which the maximum authorized sentence to confinement is more than two years and, also, because the adjudged sentenced included a bad-conduct discharge. *See* Article 60a(b)(1) (2019 *MCM*).

because of the assistance Appellant provided in the investigation and prosecution of other persons. The convening authority could do so as a matter of his clemency power under Article 60a(b)(2), UCMJ (2019 *MCM*). Because the convening authority could grant sentencing relief (i.e., take action) with the power conferred by Article 60a and R.C.M. 1109 in the 2019 *MCM*, he was not *required* to follow any legacy provisions of Article 60 in the 2016 *MCM* that were in effect on the date of Appellant's earliest offense. Consequently, the convening authority could effectuate Appellant's sentence, as he did, by taking no action on the punitive discharge, reduction in grade, and forfeiture of pay and by reducing Appellant's three months of confinement to 50 days in accordance with Article 60a and R.C.M. 1109 in the 2019 *MCM*.

Conversely, if Appellant's adjudged sentence had included eight months of confinement (and not three months) and the limitation on confinement in the PTA remained 60 days, then the convening authority would have been *required* to follow Article 60 and R.C.M. 1107 in the 2016 *MCM* "to the extent that Article 60 . . . *requires action by the convening authority on the sentence*" as directed by Exec. Order, § 6(b)(1). (Emphasis added). This is so because there is no legal authorization in the 2019 *MCM* for the convening authority to honor the agreement and effectuate the confinement cap—as there is in the 2016 *MCM*—by either granting clemency[23] or enforcing a sentence limitation in a PTA.[24] In such a case the convening authority would be *required* to grant relief (i.e., take action) on the sentence by following Article 60 in effect on the date

---

[23] In cases like Appellant's, a convening authority has no authority in the 2019 *MCM* to reduce or commute a sentence of confinement, if the total period of confinement imposed for all offenses is greater than six months. *See* Article 60a(b)(1)(A), UCMJ, 10 U.S.C. § 860a(b)(1)(A) (2019 *MCM*), and R.C.M. 1109(c)(5)(A) (permitting a convening authority to "reduce, commute, or suspend, in whole or in part" the confinement portion of a sentence that is *six months or less*).

[24] In cases like Appellant's, there is no provision in the 2019 *MCM* that is similar to Article 60(c)(4)(C), UCMJ (2016 *MCM*), that would authorize a convening authority to honor and effectuate an agreed-upon sentencing limitation in a PTA:

> If a pre-trial agreement has been entered into by the convening authority and the accused, as authorized by Rule for Courts-Martial 705, the convening authority or another person authorized to act under this section shall have the authority to approve, disapprove, commute, or suspend a sentence in whole or in part pursuant to the terms of the pretrial agreement . . . .

Article 60(c)(4)(C), UCMJ (2016 *MCM*).

of the earliest offense.[25] Without the legacy provision in Article 60 that allows the convening authority to take the required action on the sentence, the convening authority would be in breach of the PTA if Article 60a (2019 *MCM*) was the only legal authority the convening authority had to effectuate a sentence.

In cases that are referred to trial on or after 1 January 2019, there can be no mistaking Congress' intent that a convening authority's taking "no action" on the sentence effectuates the adjudged sentence in the same way that a convening authority once approved the sentence without modification under the former Article 60 (2016 *MCM*). And, there is no mistaking Congress' assigning to the President the authority to implement the MJA, consistent with this intent, not later than 1 January 2019. Significantly, perhaps, the CAAF has looked to dates of legislative enactment when it "harmonize[s] independent provisions of a statute." *Christian*, 63 M.J. at 208 ("It is a well-established principle of statutory construction that, absent a clear direction of Congress to the contrary, a law takes effect on the date of its enactment." (citations omitted)). Additionally, our superior court has "continually reiterated that the Uniform Code of Military Justice controls when an executive order conflicts with part of that Code." *United States v. Pritt*, 54 M.J. 47, 50 (C.A.A.F. 2000) (citing *United States v. Gonzalez*, 42 M.J. 469, 474 (1995); *United States v. Mance*, 26 M.J. 244, 252 (1988)).

Here, there is no conflict between the President's implementation of the MJA in Executive Order 13,825 and Article 60a (2019 *MCM*) so long as Exec. Order 13,825, §§ 3(a), 5, and 6(b), are each given "full force and effect," *Kelly*, 77 M.J. at 407, on 1 January 2019. Under Exec. Order 13,825, § 6(b)(1), a convening authority looks to the legacy provisions of Article 60 to the extent that a convening authority may be required to take action on the sentence. Because taking "action" in the 2019 *MCM* means "granting relief," practitioners accustomed to "action" being synonymous with effectuating the results of a court-martial in a pre-2019 *MCM* provision may best relate to the contemporary meaning of "action" if § 6(b)(1) is restated thusly,

> If the accused is found guilty of a specification alleging the commission of one or more offenses before January 1, 2019, Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . to the extent that Article 60:

---

[25] The example assumes the convening authority cannot, or decides not to, apply Article 60a(d), 10 U.S.C. § 860a(d) (2019 *MCM*) (reduction of sentence for substantial assistance by accused).

> (1) requires [granting relief] by the convening authority on the sentence[26]
>
> . . . .

Exec. Order 13,825, 83 Fed. Reg. at 9890.

This reading of § 6(b)(1) affords "action" its new meaning that is narrower than its legacy use in prior editions of the *Manual. See United States v. Andrews*, 77 M.J. 393, 400 (C.A.A.F. 2018) (questions of interpretation should begin and end with the text, "giving each word its ordinary, contemporary, and common meaning" (quoting *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017))). "[I]t's a 'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary . . . meaning . . . at the time Congress enacted the statute.'" *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (alteration in original) (quoting *Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018)). And sometimes, "[w]ords in statutes can enlarge or contract their scope as other changes, in law or in the world, require their application to new instances or make old applications anachronistic." *West v. Gibson*, 527 U.S. 212, 218 (1999) (citation omitted). Giving "action" a contemporary meaning is not only coherent with the new use of the term in Article 60a, UCMJ, and R.C.M. 1109 and R.C.M. 1110 in the 2019 *MCM*, it is also consistent with the use of the term where it appears again in Exec. Order 13,825, § 6(b)(2), which authorizes a convening authority to follow a legacy provision of Article 60 to the extent that it "*permits* action by the convening authority on the findings." 83 Fed. Reg. at 9890 (emphasis added). A contemporary understanding of "action" as synonymous with granting relief renders § 6(b)(2) to mean that it "permits a convening authority to disapprove a finding of guilty or approve a finding of guilty only of a lesser offense" in cases in which a legacy provision of Article 60 grants an accused this right.[27]

---

[26] Or, to rephrase grammatically, ". . . requires the convening authority to grant relief on the sentence."

[27] *See, e.g.*, Article 60(c)(3), UCMJ, 10 U.S.C. § 860(c)(3), as it appears in the *Manual for Courts-Martial, United States* (2012 ed.) (2012 *MCM*), which gives plenary authority to a convening authority to approve or disapprove the findings of a court-martial:

> Action on the findings of a court-martial by the convening authority or other person acting on the sentence is not required. However, such person, in his sole discretion, may—(A) dismiss any charge or specification by setting aside a finding of guilty thereto; or (B) change a finding of guilty to a charge or specification to a finding of guilty to an offense

Most significantly, a contemporary reading avoids a de facto nullification of the President's implementation of R.C.M. 1109 and 1110 in every case where there is a conviction for at least one offense committed before, and referred on or after 1 January 2019, and a convening authority determines action on the sentence is not warranted. It is incongruous that the President would implement Articles 60a and 60b, UCMJ, 10 U.S.C. §§ 860a, 860b, and R.C.M. 1109 and 1110 effective on 1 January 2019, and then hold their application in abeyance without some positive statement of intent to that effect in the implementation, as was the case for other articles of the UCMJ and Rules for Courts-Martial.[28]

Moreover, this reading of § 6(b)(1) affords an accused a substantive right to have a convening authority honor a PTA—and not merely specifying the manner by which a convening authority effectuates a sentence—that is in harmony with other substantive provisions of § 6(b), that also protect an accused's rights under legacy provisions of Article 60.[29] To illustrate, § 6(b)(5), which the opinion of the court cites and is a matter of first impression, states that Article 60 in effect on the date of earliest conviction "shall apply to the convening authority" to the extent that it "*authorizes* the convening authority to approve, disapprove, commute, or suspend a sentence in whole or in part." Exec. Order 13,825, § 6(b)(5), 83 Fed. Reg. at 9890. (Emphasis added). Unlike § 6(b)(1), which "requires" a convening authority to look to a legacy provision of Article

---

that is a lesser included offense of the offense stated in the charge or specification.

[28] *See*, *e.g.*, Exec. Order 13,825, § 10(b), stating that new Rules for Courts-Martial implementing new articles that change sentencing procedures apply "only to cases in which all specifications allege offenses committed on or after January 1, 2019." *See also* Exec. Order 13,825, § 6(a), "The amendments to Articles 2, 56(d), 58a, and 63 of the UCMJ enacted by sections 5102, 5301, 5303, and 5327 of the MJA apply only to cases in which all specifications allege offenses committed on or after January 1, 2019." Notably, Articles 60a and 60b, UCMJ (2019 *MCM*), that were enacted by sections 5322 and 5323 of the MJA, are not among the new code provisions that the President implemented effective 1 January 2019, and then expressly held in abeyance until all findings of guilty are to offenses that an appellant commits on or after the date of implementation.

[29] The guidance in Exec. Order 13,825, § 6(b), addresses an accused's substantive rights in regard to the findings (Subsection (2)), the adjudged sentence (Subsections (1) and (5)), both the finding and the sentence (Subsection (3)), and a proceeding in revision or a rehearing (Subsection (4)) under prior versions of Article 60 that were in effect on the date of the earliest offense. *See* Exec. Order 13,825, § 6(b)(1)–(5), 83 Fed. Reg. at 9890.

60 to take action by granting relief on the sentence as discussed, § 6(b)(5) is more deferential.[30] It "authorizes" a convening authority to look to a legacy provision of Article 60 "to approve, disapprove, commute, or suspend a sentence in whole or in part," but does not require a convening authority to do any of these things unlike § 6(b)(1). The same is true of § 6(b)(3), which "authorizes" a convening authority to look to a legacy provision of Article 60 to "modify the . . . sentence of a court-martial." Not insignificantly, the President's direction to convening authorities with respect to legacy provisions of Article 60 is not that "the convening authority shall apply" such provisions, but that such provisions "shall apply to the convening authority," which like the distinction between "authorizes" and "requires" is more deferential in that §§ 6(b)(3) and 6(b)(5) grant authority but do not compel its use. As applied to the case before us, §§ 6(b)(3) and 6(b)(5) do not preclude a convening authority from applying Article 60a (2019 *MCM*) when Article 60 (2016 *MCM*) was in effect on the date of Appellant's earliest conviction. But, in instances in which a convening authority has plenary authority to effect a sentence, for example, as is the case with provisions of Article 60 in the *Manual for Courts-Martial, United States* (2012 ed.) (2012 *MCM*), the convening authority is authorized by §§ 6(b)(3) and 6(b)(5) "in his sole discretion," to modify the sentence and to "approve, disapprove, commute, or suspend the sentence in whole or in part." *See* Article 60(c)(2), UCMJ, 10 U.S.C. § 860(c)(2) (2012 *MCM*).[31]

Finally, affording "action" a contemporary meaning in the President's Executive Order reveals that the reliance by the opinion of the court on Article 60(c)(2)(A), UCMJ (2016 *MCM*), to understand when a convening authority's action on the sentence may be required is inapt. As noted previously, this provision states without qualification that "[a]ction on the sentence of a court-martial shall be taken by the convening authority." Because taking "action" in the 2019 *MCM* means "granting relief," application of a contemporary meaning to this legacy provision of Article 60 (2016 *MCM*) would require a convening authority to grant relief in every case, which is an unreasonable result that the President could not have intended when he issued Executive Order 13,825. *See United States v. Ortiz*, 76 M.J. 189, 192 (C.A.A.F. 2017) ("From the earliest times, we have held to the 'plain meaning' method of statutory interpretation. Under that method, if a statute is unambiguous, the plain meaning of the

---

[30] Exec. Order 13,825, § 6(b)(3) and (4), each "authorizes" a convening authority to look to a legacy provision of Article 60, and are similarly deferential. Neither "requires" the convening authority to do anything unlike § 6(b)(1).

[31] *See also* Article 60(c)(1), UCMJ, 10 U.S.C. § 860(c)(1) (2012 *MCM*) (authority "to modify the findings and sentence of a court-martial is a matter of command prerogative involving the sole discretion of the convening authority").

words will control, so long as that meaning does not lead to an absurd result."), *aff'd*, 138 S. Ct. 2165 (2018).

In summary, in cases like Appellant's where there is a conviction for at least one offense committed before 1 January 2019 that was referred on or after that date, a convening authority follows Articles 60a and 60b (2019 *MCM*) and R.C.M. 1109 and 1110, as applicable, that implement the new articles of the UCMJ unless an appellant benefits from the discretion that Congress conferred on a convening authority in a version of Article 60 that was in effect when an appellant committed the earliest offense. If the convening authority determines that granting sentencing relief (i.e., action) is not required under a legacy version of Article 60, for example, to enforce a limitation on sentence in a PTA, or that relief that a convening authority has the power to grant is not warranted upon consideration of an appellant's clemency submission and other matters, then the convening authority follows Articles 60a and 60b, and R.C.M. 1109 and 1110, as applicable, in the 2019 *MCM* to effectuate the sentence. If, however, the convening authority determines that action on the sentence is required under the version of Article 60 in effect on the date of the earliest offense because granting relief is required to effectuate the sentence—as may be the case with a sentence limitation in a PTA—then the convening authority is required to follow a provision in an earlier version of Article 60 and the corresponding R.C.M. that give effect to the convening authority's statutory responsibility to effectuate the sentence.

## D. Conclusion

There is no tension, much less contradiction, with Exec. Order 13,825, §§ 3(a), 5, and 6(b), or other provisions of the President's implementation of the MJA, so long as taking "action" on the sentence is given its contemporary meaning, "granting relief," where "action" appears in Exec. Order 13,825, § 6(b)(1). In the case before us, the convening authority granted no relief on the punitive discharge, reduction in grade, and forfeiture of pay so he took no action other than to reduce Appellant's confinement from three months to 50 days. The convening authority had no obligation under the President's implementation of the MJA to "approve" the components of Appellant's sentence on which he took no action.

I find the convening authority fully complied with the President's implementation of the MJA and that he did not err in the manner by which he effectuated the sentence he determined was appropriate after Appellant's trial, and that the military judge correctly entered as the judgment of the court-martial. The convening authority's decision memorandum was neither ambiguous nor incomplete as found by the opinion of the court. Accordingly, I find no substan-

tial issue with the convening authority's decision memorandum and would not defer addressing Appellant's assignments of error by remanding the case.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court